

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | CASE NO. 4:11CR118 |
| v. | § | |
| | § | |
| ALBERTO FUENTES, JR. | § | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
REGARDING DEFENDANT'S MOTION TO SUPPRESS**

This matter having been referred by the Honorable Richard A. Schell, the Court has considered Defendant Alberto Fuentes, Jr.'s Motion to Suppress Evidence (Dkt. 25). After considering the evidence presented and the arguments of counsel at the November 2, 2011 hearing, the Court finds that the motion (Dkt. 25) should be **GRANTED** in part and **DENIED** in part.

Defendant Alberto Fuentes, Jr. is charged in this matter with felon in possession of a firearm, a Glock, Model 22, .40 caliber semi-automatic pistol. In his motion to suppress, Fuentes seeks to suppress a statement made and firearm recovered on February 27, 2011 at Fuentes's residence at 1400 Eldorado Parkway, Apt. 3212, McKinney, Texas.

Defendant alleges that the gun was acquired during an illegal search after police officers responded to a domestic disturbance call at his apartment. Defendant claims that officers conducted the search without a warrant and without his consent and that he should have been read *Miranda* warnings before being questioned. Therefore, Defendant asserts that any evidence seized or acquired

during the search and any of his statements that led to the recovery of the weapon should be suppressed. The Government contends that Defendant was not under arrest at the time he was questioned (and therefore did not need *Miranda* warnings) and that the officers were entitled to conduct a protective sweep to ascertain the location of the firearm and to seize and maintain control over it while they completed their investigation.

### EVIDENCE PRESENTED

At the hearing, the Court heard testimony of Officer Daniel Malenfant, the McKinney police officer who recovered the weapon from Defendant's residence. The Government also offered the recording of Defendant's wife's 911 call and photographs from the scene of the wife, her brother, and Defendant's apartment.

Officer Malenfant was the first officer to respond to the domestic disturbance call at 1400 Eldorado Parkway, Apt. 3212, McKinney, Texas, just before 4:00 a.m. on February 27, 2011. He testified that he was told by dispatch that a domestic violence incident had occurred between a woman and her husband or boyfriend, that she had gone to another apartment to call police, and that a gun was involved. As the primary officer, Malenfant stated that he was in charge of securing the scene and safeguarding the victim and evidence, including securing any weapons.

According to Malenfant, when he arrived at the apartment complex, Defendant's wife, Jennifer Fuentes, cut and bleeding from her face, came up to his car and told Malenfant that she had a fight with her husband and that her husband was still in the apartment, beating up her brother. She

also indicated that her husband was in possession of a firearm. Malenfant stated that he then proceeded to the location where the disturbance had occurred, after which three backup officers arrived. A male subject, also beaten-up, soon came walking down the stairs, and Malenfant and the other officers detained and handcuffed him. This individual was later identified by Mrs. Fuentes as her brother, Juan Medina.

Next, Malenfant testified, he heard an unknown female yelling from the apartment, "He's in here!" As Malenfant approached the doorway with another officer, he made contact with the suspect, Alberto Fuentes, Jr. Malenfant ordered Fuentes to come out of the doorway, Fuentes complied, and Fuentes was detained and handcuffed.

Malenfant testified that neither Fuentes nor Medina resisted the officers and that, once handcuffed, neither posed a threat to officers. Malenfant stated at the hearing that he could not recall who searched Fuentes, but that no weapons were found on Fuentes or Medina. Officers then seated a handcuffed Fuentes at the top of the stairs outside the apartment, with Medina seated at the bottom. Malenfant testified that Fuentes was secured and watched by another officer while Malenfant investigated the apartment.

Officer Malenfant testified that he observed blood on the outside and inside of the apartment door and that when he looked inside the living room, he saw blood on the carpet. Prior to entering the apartment, Malenfant asked Fuentes where the gun was, and Fuentes replied that it was on a top shelf in the closet underneath some jeans. Malenfant testified that Fuentes was not free to leave at

3

this time. There is no dispute that Fuentes was never given any *Miranda* warnings before Malenfont asked him about the gun.

Malenfant then entered the apartment and conducted a protective sweep. He stated that he had been told by Mrs. Fuentes that there were three small children, another female, and possibly someone else inside the apartment and that he could hear people when he stepped inside. He found an unknown female and three children in the bedroom and looked in the closet for hidden persons as well. At that time, Malenfant recovered the weapon, a Glock .40 caliber pistol, from the bedroom closet. According to Malenfant, the gun was not in plain view but concealed in a small, narrow closet on a shelf, underneath a couple of pairs of jeans. After the gun was discovered and while Fuentes remained cuffed, officers learned that Fuentes had a felony conviction.

Malenfant admitted that he did not have a search warrant and had not obtained consent to search the apartment. Malenfant testified that it took him approximately 1 to 1.5 minutes to clear the apartment after entering it, after which time he found no threat inside.

Officer Malenfant also testified that domestic violence situations are volatile and that he conducted the protective sweep because of the blood at the apartment, the gun, the uncertainty of exactly who was inside the apartment, and the three known kids, who he needed to make sure were safe and not playing with the gun. Malenfant did testify, though, that it would have been possible to check and clear the scene before questioning Defendant.

During Officer Malenfant's testimony, the Government presented as evidence the 911 call and photographs from the scene of Defendant's wife, her brother, and the blood at the scene. On the emergency call, Jennifer Fuentes indicated that her husband/boyfriend had hit her in the eye and that she had gone to another apartment to make the call. She stated that her kids were still in the apartment and that her husband had a gun. She also indicated that her brother and his wife were in the apartment as well. The photographs from the scene showed Mrs. Fuentes, with a large laceration above her right eye and a significant amount of blood on her face and shirt; her brother, with blood on his face and an extremely swollen left eye; the apartment door, the ground in front of the apartment, and the carpet inside the apartment, all spattered with blood.[1] The defense did not call any witnesses, and both sides rested.

## ANALYSIS

### *Miranda*

As to Defendant's statement to Malenfant that there was a gun inside the apartment, there is no dispute that Defendant was not administered his *Miranda* warnings prior to being asked where the gun was. There is, moreover, no dispute that Defendant was handcuffed and not free to leave the scene prior to being questioned. Statements obtained during a custodial interrogation without providing adequate warnings under *Miranda* are generally inadmissible. *Missouri v. Seibert*, 542

---

[1] While the Court admitted the recording into evidence during the hearing, Malefant stated that he did not hear the call prior to conducting his search of the apartment. Therefore, its contents bear no relevance to the analysis herein.

5

U.S. 600, 608, 124 S. Ct. 2601, 159 L. Ed.2d 643 (2004).

However, having heard the testimony and reviewed the photographs of the scene, the Court finds that the public safety exception applies to the facts of this case. The public safety exception to *Miranda* allows the admissibility of statements given by a defendant before being given *Miranda* warnings "in a situation posing a threat to the public safety." *New York v. Quarles*, 467 U.S. 649, 657, 104 S. Ct. 2626, 2632, 81 L. Ed. 2d 550 (1984). In these "limited circumstances," the "concern for public safety must be paramount to adherence to the literal language of the prophylactic rules enunciated in Miranda." *New York v. Quarles*, 467 U.S. 649, 653, 653 n.3, 104 S. Ct. 2626, 2630, 2630 n.3, 81 L. Ed. 2d 550 (1984)

In *Fleming v. Collins*, the public safety exception applied because of concern for officers' safety when officers questioned a man, without *Miranda* warnings, (later proved to be the defendant) being held at gunpoint by a private citizen in an open field near a bank that had just been robbed. *Fleming v. Collins*, 954 F.2d 1109, 1110-12 (5th Cir. 1992). Importantly, at the time the officers questioned the defendant about the incident and the whereabouts of his gun, this was a "confusing" and "still-volatile situation;" the police officer did not know exactly who had been involved in the bank robbery. *Id.* at 1113. Therefore, there was a "necessity for the officers to determine where a loaded gun had been discarded, in order to prevent its falling into the wrong hands," and "[the police officer] had the right to inquire whether, and if so, where, [the defendant] had dropped his gun." *Id.*

Similarly, the public safety exception allowed the admission of a defendant's statement about the location of his gun and the gun itself, even though the defendant had not been read *Miranda*

warnings, when police officers were told by a woman that she had been raped, that the assailant was in a nearby supermarket, and that he had a gun. *Quarles*, 467 U.S. at 651-53, 659. Upon reaching the store and locating the suspect, officers searched him, handcuffed him, and asked him where the gun was, to which the defendant nodded towards some cartons and answered, "the gun is over there." *Id.* at 652. Officers then retrieved the gun, formally arrested the defendant, and read him *Miranda* warnings. *Id.* 652-53. The Supreme Court noted that the public safety exception applied because

> [t]he police in this case, in the very act of apprehending a suspect, were confronted with the immediate necessity of ascertaining the whereabouts of a gun which they had every reason to believe the suspect had just removed from his empty holster and discarded in the supermarket. So long as the gun was concealed somewhere in the supermarket, with its actual whereabouts unknown, it obviously posed more than one danger to the public safety: an accomplice might make use of it, a customer or employee might later come upon it.

*Id.* at 657.

Likewise, the public safety exception allowed the admission of a post-arrest statement made by a defendant regarding his possession of additional firearms when officers entered his residence pursuant to an arrest and search warrant, even though he had not yet been *Mirandized*, because "the officer's question was based on his concern about the safety of the officers on the scene and before the officers had completed a protective sweep of the residence." *United States v. Kelley*, 268 Fed. Appx. 304, 305 (5th Cir. 2008) (per curiam).

In this case, at the time that the Officer Malenfant questioned Fuentes, the situation was still volatile. *Cf. United States v. Brathwaite*, 458 F.3d 376, 382 (5th Cir. 2006) (finding that the public

7

safety exception did not apply when the "immediacy of the situation had passed" and officers had already performed two sweeps of a house, had all occupants of the house handcuffed, and the residence "was under the full control of the agents," such that the "public did not have access" and could not be injured by any hidden weapons inside the house). Officer Malenfant had not yet conducted a protective sweep and did not know who exactly was inside the apartment and what threat the gun might be to the occupants – including several minors – or officers. The Court finds that Officer Malenfant acted out of concern for the public safety when he questioned Fuentes without reading him *Miranda* warnings. As such, the public safety exception applies, and Fuentes's motion to suppress his statements about the whereabouts of the gun should be DENIED.

*__Protective Sweep__*

The Court next turns to Malenfant's entry into the apartment. A warrantless intrusion into an individual's home is presumptively unreasonable unless the person consents or probable cause and exigent circumstances justify the encroachment. *United States v. Jones*, 239 F.3d 716, 719 (5th Cir. 2001); *see also United States v. Rodea*, 102 F.3d 1401, 1404 (5th Cir. 1996). There is no evidence here to show that Fuentes or his wife consented to the search of the apartment. Therefore, the Court's inquiry is focused on whether there were exigent circumstances that would justify Malefant's entry.

The exigent circumstances exception applies where the societal costs of obtaining a warrant, such as danger to law officers or the risk of loss or destruction of evidence, outweigh the reasons for prior recourse to a neutral magistrate. *Rodea*, 102 F.3d at 1404. Such circumstances may exist if

law enforcement officers reasonably fear for their safety, if firearms are present, or if officers need to assist persons who are seriously injured or threatened with serious injury. *United States v. Flores-Castaneda*, 384 Fed. Appx. 364, 367 (5th Cir. 2010) (internal citations omitted).

There is no set formula for determining when exigent circumstances will justify a warrantless entry, however, courts consider, among other factors: (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the reasonable belief that contraband is about to be removed; (3) the possibility of danger to the police officers guarding the site of contraband while a search warrant is sought; (4) the information indicating that the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of it and to escape are characteristics in which those trafficking in contraband generally engage. *Id.* (internal quotation marks and citations omitted).

When evaluating exigency, courts should consider the appearance of the scene of the search in the circumstances presented as it would appear to reasonable and prudent men standing in the shoes of the officers. *United States v. Lewis*, 381 Fed. Appx. 376, 381 (5th Cir. 2010) (quoting *United States v. Blount*, 123 F.3d 831, 838 (5th Cir. 1997)) (internal quotation marks omitted). If reasonable minds may differ, a court should not second guess the judgment of experienced law enforcement officers concerning the risks of a particular situation. *Id.*

In this case, the Court finds that the warrantless entry into the apartment was justified based on the fact that there was a violent altercation in the apartment, evidence of blood on people, the entrance, and the inside the apartment and based on the information that individuals – including

several children – and a firearm were said to be still inside. *See Flores-Castaneda*, 384 Fed. Appx. at 367; *see also United States v. Rodriguez*, 601 F.3d 402, 408 (5th Cir. 2010) (holding that "domestic disputes often involve high emotions and can quickly escalate to violence").

This is not the end of the Court's inquiry, however. The Court next turns to whether officers properly conducted a protective sweep of the apartment and whether the gun was properly discovered during said sweep. The protective sweep doctrine allows government agents, without a warrant, to conduct a quick and limited search of premises for the safety of the agents and others present at the scene. *Rodriguez*, 601 F.3d at 405. To be constitutionally valid, (1) the police must not have entered (or remained in) the home illegally and their presence within it must be for a legitimate law enforcement purpose; (2) the protective sweep must be supported by a reasonable, articulable suspicion that the area to be swept harbors an individual posing a danger to those on the scene; (3) the legitimate protective sweep may not be a full search but may be no more than a cursory inspection of those spaces where a person may be found; and (4) the protective sweep may last no longer than is necessary to dispel the reasonable suspicion of danger, and no longer than the police are justified in remaining on the premises. *Id.* at 405-06. A court should consider the totality of the circumstances surrounding the officers' actions in determining whether an officer had a reasonable, articulable suspicion sufficient to justify a protective sweep. *Id.* at 406.

As discussed above, exigent circumstances justified Malenfant's warrantless entry into the apartment, thus satisfying the first element. Moreover, Malenfant testified that Mrs. Fuentes indicated that more individuals and a weapon were inside the apartment and Malenfant heard an

adult female voice screaming from inside. Thus, Malenfant had a reasonable basis to enter the apartment and sweep for additional individuals. *See id.* (holding protective sweep was justified when officers responded to 911 domestic disturbance call, were aware of a previous domestic disturbance call at the residence from the year before, found children in the residence who were not reported by the callers or dispatcher, and were aware of the alleged presence of a firearm in the residence); *United States v. Getachew*, 364 Fed. Appx. 931, 933 (5th Cir. 2010) (holding protective sweep was justified when officers arrived within minutes of being dispatched to a robbery in progress, were told a victim had seen men inside the house with guns, and did not know whether other suspects were still in the house).

Malenfant was further entitled to search the closet as part of his protective sweep to determine whether anyone was hiding inside. *United States v. Mata*, 517 F.3d 279, 285 (5th Cir. 2008) ("officers may search areas immediately adjoining the place of arrest, such as closets and other spaces, from which a surprise attack could occur."). He was not, however, permitted to search for weapons hidden within the closet once he determined that no one was hiding in it. "The mere presence of illegal drugs and weapons does not justify a protective sweep." *United States v. Watson*, 273 F.3d 599, 603 (5th Cir. 2001). The justification of the protective sweep is to secure the premises from others inside a home who might pose a security risk either to officer or civilian safety or by possibly destroying drugs inside. *See id.* Here, Malenfant's search of the closet shelf exceeds the cursory search for concealed people permitted by the protective sweep doctrine.

Once the children were accounted for and the closet cleared for any other people who might be hiding within, there was no further reason for any sweep to continue. A protective sweep may last no longer than is necessary to dispel the reasonable suspicion of danger, and no longer than the police are justified in remaining on the premises.

According to Malenfant, the gun was secreted between some jeans on a shelf within the closet. Had it been in plain sight, his seizure may have been permissible. *See Rodriguez*, 601 F.3d at 407 (explaining that, in conjunction with the protective sweep doctrine, the plain view exception allows police to seize items where: (1) the police lawfully entered the area where the item was located; (2) the item was in plain view; (3) the incriminating nature of the item was immediately apparent; and (4) the police had a lawful right of access to the item). But, Malenfant testified that the weapon was concealed. The Court finds that the discovery of the gun exceeded the scope of any protective sweep.

The Court finds the opinion in *Getachew*, 364 Fed. Appx. 931, instructive but distinguishable here. In that case, the court held that a reasonable suspicion of danger justified a protective sweep, but that officers exceeded the scope of the protective sweep by opening a kitchen drawer and thereby observing a firearm. However, the court held that the district court "did not err in determining that the firearm was nevertheless admissible under the independent-source exception to the exclusionary rule." *Id.* The independent-source exception "dictates that evidence obtained from an illegal search is admissible if the same evidence was also obtained from a lawful source independent of the illegality." *United States v. Runyan*, 290 F.3d 223, 235 (5th Cir. 2002). In *Getachew*, after

conducting a protective sweep, the officers obtained a warrant "based on the responding Officers' plain-view observations of scales and marijuana residue, as well as the very strong marijuana odor in the residence" during the protective sweep. *Getachew*, 364 Fed. Appx. at 933-34. The *Getachew* court noted that the "Government therefore established: the Officers would have sought a warrant in the absence of the illegal search; and, the warrant would still have been issued because it was supported by ample probable cause." *Id.* at 934. Here, nothing in the record indicates that officers ever sought a search warrant to search the apartment for a weapon after Fuentes and his wife told officers of its existence. Therefore, the independent-source doctrine is inapplicable and will not save Malenfant's discovery of the gun in the closet.

Because the gun was not lawfully within the scope of the protective sweep and not otherwise discoverable under the independent-source rule, the Court finds that Defendant's motion to suppress its seizure should be GRANTED.

Based on the evidence presented and the governing authorities, the Court finds that Defendant Alberto Fuentes, Jr.'s Motion to Suppress Evidence (Dkt. 25) should be DENIED as to Defendant's statements and GRANTED as to the seizure of the gun in the closet.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(c).

Failure to file written objections to the proposed findings and recommendations contained in this report within the time period set forth above shall bar an aggrieved party from *de novo* review

by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 10th day of November, 2011.**

*[signature: Don D. Bush]*
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE